UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROMERO D. ROUSER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-1334** |
| **ROBERT STRADER, WARDEN** | **SECTION "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual and Procedural Background

The petitioner, Romero D. Rouser, Jr. ("Rouser"), is a convicted inmate incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2] On April 5, 2012, Rouser was indicted by an Orleans Parish Grand Jury on one count of second-degree murder and two counts of attempted second-degree murder.[3] He entered pleas of not guilty on April 13, 2012.[4]

The record reflects that Rouser's brother, Jumon Stubbs ("Stubbs"), and Melvin James, Jr. ("Melvin Jr."), the deceased, were friends.[5] Melvin's family owned the One Stop Auto Repair

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 4/5/12.

[4]St. Rec. Vol. 1 of 7, Minute Entry, 4/13/12.

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Rouser*, 156 So. 3d 860, 864-65 (La. App. 4th Cir. 2015); St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-

shop in the 2600 block of North Miro Street.  Prior to December 30, 2011, Stubbs, who worked at a tire shop, gave some tire rims to Melvin Jr. before receiving payment.  On December 30, 2011, Stubbs went to the One Stop Auto Repair shop to collect either the money or the rims, as year-end inventory at the tire shop was approaching.  Stubbs and Melvin had exchanged words over the tire rims and threw a few punches at each other.  After the fight, Stubbs called 911 to report his efforts to get the rims or money and later left the repair shop in his own car.  Stubbs later returned to the repair shop with Rouser and their cousin, Derek Ford ("Ford").  Stubbs also called 911 to alert the police that he was going back to the shop.  On their arrival, several people were present at the shop, including a customer, David Lanois, Robert and Troy James (Melvin Jr.'s brothers), Melvin James, Sr. ("Melvin Sr.") (Melvin Jr.'s father), Sindy James (Melvin Jr.'s wife), Traver James, Stephen Ray, and Emile Blackburn.

    Stubbs and Melvin had another physical altercation over the rims.  When the second fight ended, Rouser made remarks to Melvin, who was crossing the street back to the shop not far from where Rouser was standing next to the opened passenger door of Stubbs' car.  At that time, Robert, Melvin Jr.'s brother, challenged Rouser.  When Rouser put his hands in Robert's face, Robert punched Rouser, and a fight between the two erupted.  Rouser crouched into a ball with his back against the car while Robert continued to pummel him.  The fight left Robert with swollen hands and wrists and Rouser with a number of bruises and marks.  During that fight, Stubbs, again, called 911 to alert the police that he "was getting into it" with someone over the tire rims, and he heard someone had a gun.  At some point, after the fight appeared to have ended, Rouser got a gun out of Stubbs' car and shot it ten times in the direction of Melvin Jr. and Troy James.

---

KA-0613, pp. 2-3, 1/7/15.

Melvin Jr. was fatally shot by six bullets in the back, thigh and abdomen area. His brother, Troy, was struck by two bullets in his right arm and hip. An innocent customer, David Lanois, was struck with one bullet in the groin. Rouser, Stubbs, and Ford immediately fled the scene in Stubbs' car and claimed that they were shot at as they left. The James family and other witnesses denied that anyone shot at the car as it sped away. Rouser eventually turned himself in to police.

Rouser was tried before a jury on October 28 through 31, 2013, and found guilty of the lesser offenses of manslaughter and two counts of attempted manslaughter.[6] The trial court sentenced Rouser on December 17, 2013, to serve concurrent terms of 30 years in prison for manslaughter and 15 years in prison on each count of attempted manslaughter.[7]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Rouser's appointed counsel asserted three assignments of error: (1) the evidence was insufficient for the jury to find that Rouser did not act in self-defense, and the trial court erred in instructing the jury on justification and retreat; (2) the trial court erred in excluding certain evidence under the hearsay rule, which prevented him from presenting a defense; and (3) his sentence was excessive.[8] On January 7, 2015, the Louisiana Fourth Circuit affirmed Rouser's convictions and sentences. The Louisiana Fourth Circuit held that Rouser did not preserve for appeal the challenges to the jury instruction on retreat and to the admissibility of certain testimony because there were no objections at trial as required by La. Code Crim. Proc. art. 841. In addition, the Louisiana Fourth Circuit held that

---

[6] St. Rec. Vol. 1 of 7, Trial Minutes, 10/28/13; Trial Minutes, 10/29/13; Trial Minutes, 10/30/13; Trial Minutes, 10/31/13; Jury Verdict (count 1), 10/31/13; Jury Verdict (count 2), 10/31/13; Jury Verdict (count 3), 10/31/13; St. Rec. Vol. 2 of 7, Trial Transcript, 10/28/13; St. Rec. Vol. 3 of 7, Trial Transcript, 10/29/13; St. Rec. Vol. 4 of 7, Trial Transcript, 10/30/13; St. Rec. Vol. 5 of 7, Trial Transcript, 10/31/13.

[7] St. Rec. Vol. 1 of 7, Sentencing Minutes, 12/17/13; St. Rec. Vol. 5 of 7, Sentencing Transcript, 12/17/13.

[8] St. Rec. Vol. 6 of 7, Appeal Brief, 2014-KA-0613, 7/2/14.

portions of the challenge to the evidentiary rulings were not properly presented for appellate review, and the remaining claims were without merit.[9]

Rouser presented a writ application to the Louisiana Supreme Court in which he only brought for review his claims of insufficient evidence to overcome self-defense, misapplication of hearsay rules, which prevented him from presenting a defense, and excessive sentence.[10] The Louisiana Supreme Court denied the writ application without stated reasons on December 7, 2015.[11] Rouser's conviction was final, under federal law, ninety (90) days later, on Monday, March 7, 2016,[12] when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (a state defendant's conviction is not final for purposes of seeking federal habeas review until the conclusion of the out of time appeal process).

## II. Federal Habeas Petition

On February 10, 2017, the clerk of this Court filed Rouser's petition for federal habeas corpus relief in which he asserts two grounds for relief:[13] (1) the evidence was insufficient to negate

---

[9]*Rouser*, 156 So.3d at 860; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0613, 1/7/15. The Court also remanded the matter for the Trial Court to correct language in its sentencing minutes and commitment order.

[10]St. Rec. Vol. 6 of 7, La. S. Ct. Writ Application, 15-KO-193, p. 2, 1/28/15.

[11]St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2015-KO-0193, 12/7/15.

[12]The last day fell on Sunday, March 6, 2016, leaving the final day of the period to fall on the next business day, Monday, March 7, 2016. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

[13]Rec. Doc. No. 1.

4

self-defense and the trial court erred when instructing the jury on justification and retreat and (2) an excessive sentence. Rouser failed to brief his claim or any arguments in support of a third claim listed on the form petition regarding evidentiary errors. He conceded in his supporting memorandum that the claim related to the improper jury charge on retreat was in procedural default. As to that claim, he stated that "this issue is not argued at this time."[14] In his traverse to the State's opposition response, Rouser reiterates his intent to assert only the two claims addressing insufficient evidence to disprove self-defense and an excessive sentence.[15]

The State filed a response in opposition to Rouser's petition, recognizing the only two remaining claims asserted by Rouser regarding insufficient evidence and excessive sentence. The State asserts that these claims are without merit.[16]

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[17] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 9, 2017.[18] The threshold questions on habeas review, under the amended

---

[14]Rec. Doc. No. 1, p. 26-27.

[15]Rec. Doc. No. 9.

[16]Rec. Doc. No. 8.

[17]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Rouser's petition on February 10, 2017, when it was received with the filing fee. Rouser did not date his memorandum

statute, are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Rouser's federal petition was timely filed, and he exhausted state court review. Of the two claims Rouser has chosen to pursue, neither is in procedural default.[19] However, for the reasons that follow, Rouser is not entitled to federal habeas relief.

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), which provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct, and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

in support and inexplicably the date typed ahead of his signature on the form petition is September 28, 2016, over five months before he mailed his petition on February 9, 2017. Nevertheless, his federal petition is timely filed relying on either date. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[19]As discussed previously, and conceded by Rouser, the other two issues asserting improper jury instructions and evidentiary/presentation of defense arguments were found to be in procedural default by the state courts and would be barred, here, from federal review, even if raised.

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law," as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706; *Williams*, 529 U.S. at 407, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410.

7

The Supreme Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound; rather, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V. Sufficiency of the Evidence

Rouser asserts that he does not dispute that the State proved the elements of manslaughter as to the death of Melvin James, Jr.[20] Rouser alleges, however, that the State failed to prove that he did not act in self-defense or that his actions were justifiable under the circumstances. Rouser argues that the jury erred in discrediting the defense witnesses' claims that he was still under attack when he shot the weapon. Rouser also contends that the State's witnesses lied and should not have

---

[20]Rec. Doc. No. 1, p. 24.

been found credible by the jury or relied on by the Louisiana Fourth Circuit in ruling against him on this point.

Rouser's appointed counsel asserted, on direct appeal, that the State failed to prove that the shooting was not justifiable and that Rouser was not in fear for his life at the time. Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state case law, the Louisiana Fourth Circuit considered the evidence in the light most favorable to the verdict and found that the facts, such as the distance and angles of the shots that hit Melvin Jr., supported the conclusion that the force Rouser used was unnecessary because he was no longer being beaten and was not in danger for his life when he fired the shots. This was the last reasoned opinion on the issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Claims of insufficient evidence present a mixed question of law and fact. *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must, therefore, give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application, of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).

Louisiana law allows for a crime to be proven by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends

to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the Court does not apply this state law "reasonable hypothesis" standard, and instead, must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. Thus, the appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather, whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In this case, Rouser does not challenge the sufficiency of the evidence to prove manslaughter and attempted manslaughter. He, instead, only challenges the sufficiency of the evidence produced to prove that he did not act in self-defense when he shot the weapon. As an initial matter, much of Rouser's argument focuses on whether the jury should have given more credibility to the defense witnesses than it did to the State's witnesses, whom he claims misrepresented the circumstances of the shooting as he remembers them. Although the evidence of Rouser's guilt is based in part on the credibility of the various witnesses, this alone is insufficient to supplant the jury's determination. As previously mentioned, the jury, as the trier of fact, has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts," and thus, the function of this Court, on habeas review, is not to reevaluate the credibility determinations made by the jury or reassess the weight

given to the evidence or a particular witness' testimony. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Weeks*, 55 F.3d at 1062; *Young*, 107 F. App'x at 443. Instead, the Court reviews the facts in a light most favorable to the prosecution to determine whether the jury made a rational decision to convict Rouser, or in this case, find that he did not act in self-defense. *See Santellan*, 271 F.3d at 193.

Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. Rev. Stat. § 14:20(A)(1). The determination of a defendant's culpability when self-defense is raised rests on a two-fold test under Louisiana law: (1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger and (2) whether deadly force was necessary to prevent the danger. *Hyman v. Cain*, No. 14-1123, 2015 WL 3755867, at *10 (E.D. La. June 16, 2015) (Order adopting Report and Recommendation) (citing *State v. Theriot*, 963 So. 2d 1012, 1020 (La. App. 5th Cir. 2007)). In a non-homicide situation, Louisiana law provides that a claim of self-defense applies when the force used was reasonable under the circumstances and was apparently necessary to prevent harm to the accused. La. Rev. Stat. § 14:19(A). In either situation, the State has the burden of proving that petitioner did not act in self-defense. *Trosclair v. Cain*, No. 12-2958, 2014 WL 4374314, at *7 (E.D. La. Sept. 2, 2014) (Order adopting Report and Recommendation) (citing *State v. Lilly*, 552 So. 2d 1036, 1039 (La. App. 1 Cir. 1989)).

The evidence demonstrated that, when Melvin Jr. and Stubbs stopped their second fight, Rouser, who was near Stubbs' Camaro, exchanged words with Melvin Jr., who was crossing the

street back towards the tire shop.[21] Robert then called out to Rouser that he would fight since Melvin Jr. was tired. As Rouser raised his hand to Robert's face, Robert punched him.[22] Rouser balled up and backed against the car near the opened door, and Robert continued to beat him.[23] Troy James went over to try to break it up and was soon pulled away by his father, Melvin James, Sr.[24] Melvin Sr. then pulled Robert off of Rouser, thinking Robert was beating on Stubbs.[25] After Melvin Sr. pulled Robert away, Rouser reached in the car, and the shots rang out in succession.[26] Troy was walking away across the street when he was struck from behind by a bullet.[27] As Troy got up to move away, he was hit by a second bullet.[28] Daniel Lanois was also hit in the leg by a bullet as he stood across the street closer to the shop.[29] Melvin Jr. was hit multiple times from behind, and as he lay there, Rouser walked closer and shot him at least three more times.[30] None of James' family members or Lanois had a gun or weapon, nor did they see anyone other than

---

[21] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 120-21 (Troy James), 10/29/13.

[22] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 121-22 (Troy James), p. 162 (Robert James), p. 247 (Sindy James), 10/29/13.

[23] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 122, 124 (Troy James), pp. 162-63 (Robert James), 10/29/13.

[24] St. Rec. Vol. 3 of 7, Trial Transcript, p. 125 (Troy James), p. 196 (Melvin James, Sr.), p. 223 (Daniel Lanois), p. 247 (Sindy James), 10/29/13.

[25] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 143-44 (Troy James), p. 163 (Robert James), p. 196 (Melvin James, Sr.), p. 223 (Daniel Lanois), p. 247 (Sindy James), 10/29/13.

[26] St. Rec. Vol. 3 of 7, Trial Transcript, p. 164 (Robert James), pp. 223-24 (Daniel Lanois), p. 248 (Sindy James), 10/29/13.

[27] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 125-26 (Troy James), 10/29/13.

[28] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 126-27 (Troy James), 10/29/13.

[29] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 224-25 (Daniel Lanois), 10/29/13.

[30] St. Rec. Vol. 3 of 7, Trial Transcript, pp. 198-99 (Melvin James, Sr.), pp. 224-25 (Daniel Lanois), pp. 248-49 (Sindy James), 10/29/13.

Rouser with a gun that day.[31] Even Rouser's brother Stubbs never saw anyone with a gun, although he told the 911 operator that he heard someone might get a gun.[32] None of the James family or Lanois saw bullet holes or a shattered window on the Camaro at the scene or as it drove off.[33]

Based on the testimony at trial, there was more than sufficient evidence for a reasonable fact finder to conclude that Robert had been pulled away from Rouser and no one was threatening or hitting Rouser when he retrieved the gun and turned to shoot multiple times in the directions of Melvin Jr. and Troy, both of whom were walking away or some distance away from him. A reasonable jury could also have concluded that no one threatened Rouser or anyone with a weapon or tool until Rouser retrieved the gun after the fighting stopped. Stubbs and Ford gave inconsistent testimony for the defense with regard to many of the facts surrounding the incident, including, but not limited to, Melvin Sr.'s role in breaking up the fight and whether another person at the scene actually had a gun anywhere in the vicinity of the fight. In sum, the evidence was more than sufficient for the jury to conclude that the State's witnesses were credible and that Rouser's unnecessary use of the gun after the fighting had ceased did not constitute self-defense.

Rouser has failed to establish that there was insufficient evidence to disprove the self-defense theory under the *Jackson* standard. The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court law. As such, Rouser is not entitled to relief on this claim.

---

[31]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 129-30, 142, 147 (Troy James), pp. 167, 182-83 (Robert James), p. 226 (Daniel Lanois), pp. 249-50 (Sindy James), 10/29/13.

[32]St. Rec. Vol. 4 of 7, Trial Transcript, pp. 235-36 (Jumon Stubbs), 10/30/13.

[33]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 182-83 (Robert James), pp. 226-27 (Daniel Lanois), 10/29/13.

## VI. <u>Excessive Sentence</u>

In addition, Rouser alleges that the thirty-year sentence for manslaughter imposed by the state trial court was excessive under the circumstances of his case. Rouser asserts that he was a law-abiding person who had no intent to harm anyone that day and should not be subjected to such a long sentence for the manslaughter conviction.

The Louisiana Fourth Circuit addressed this claim on direct appeal. The Court noted that the state trial court adequately considered the sentencing guidelines and articulated the factual basis for the sentence. The Court also determined that the state trial court properly considered both the aggravating and mitigating factors. Further, the Court compared Rouser's sentence to other cases and determined that the sentence imposed was consistent, and otherwise, was meaningfully tailored to Rouser and the offense.

To the extent Rouser challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *see also*, *Turner v. Cain*, 199 F.3d 437, No. 99-30041, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw). When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 n.17 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other

jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare," and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 23-30 (2003) (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

For purposes of federal habeas review, under the AEDPA standard, an excessive sentence claim presents a question of law. *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); *Davis v. Cain*, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); *Jones v. Kaylo*, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).

In this case, Rouser was charged with the second-degree murder of Melvin James, Jr. After trial, Rouser ultimately was convicted of manslaughter and sentenced to thirty (30) years in prison on that count. Louisiana law provides that a person convicted of manslaughter shall be imprisoned at hard labor for not more than forty (40) years. La. Rev. Stat. Ann. § 14:31B. Rouser's sentence clearly fell within the limits set by the Louisiana legislature. Accordingly, this court considers only proportionality compared with sentences imposed in similar cases.

Before imposing its sentence on Rouser, the state trial court addressed the facts and circumstances of the case at length and gave specific reasons for imposing the sentence for manslaughter and the two attempted manslaughter convictions. The trial court discussed the victim impact letters, Rouser's lack of a prior criminal history, the unnecessary number of shots taken by Rouser, and the fact that Melvin Jr. and Troy were struck from behind. The trial court,

16

therefore, considered the relevant factors necessary to contour and support the sentence under the circumstances of the case.

In addition, a survey of the Louisiana cases in the public domain establishes that Rouser's sentence was not out of line with sentences imposed upon similarly situated defendants. *See, e.g.*, *State v. Lewis*, 48 So. 3d 1073 (La. 2010) (sentence of thirty years for manslaughter where the defendant had picked up a gun while watching two friends fight and shot one of the combatants in the head, killing him); *State v. Lee*, 216 So. 3d 205, 207 (La. App. 2d Cir. 2017) (thirty-year sentence for plea of manslaughter where, following a physical altercation, the victim walked away to cool off, but defendant grabbed a gun from the victim's car, followed him down the street, and shot and killed the victim); *State v. Cedars*, No. 2016-KA-1044, 2017 WL 3334872, at *1 (La. App. 3d Cir. Jul. 19, 2017) (thirty-year sentence for manslaughter where shooting occurred after several fights amongst various family members, including defendant and victim, had occurred throughout the day).

Applying the factors and legal standards discussed above, Rouser has not demonstrated that his thirty-year sentence for manslaughter was unconstitutionally excessive or that the state court's consideration of his excessive sentence claim was contrary to or involved an unreasonable application of clearly established federal law. Therefore, Rouser is not entitled to relief on this claim.

### VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Rouser's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 17th day of October, 2017.

                                              **KAREN WELLS ROBY**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.